LEONARD B. BRONSON *vs.* WINIFRED B. COFFIN & another.

Bristol.  Oct. 27, 1874. — August 10, 1875.  COLT & AMES, JJ., absent.

A power of attorney authorized the agent to sell and convey all the principal's real
    estate in a certain city, and all his right, title and interest in and to any and all said
    real estate, and to make, execute and deliver all necessary deeds of conveyance of
    the same; to pay all taxes on said estate, to lease it and to do any and all other
    acts in relation thereto that the principal's interest might require; to use all due
    means for the complete execution of the said business; to appear and represent
    the principal in any actions relating to the premises; to submit any matter re-
    specting the premises to arbitration, and generally to do " all matters and things
    relating to the premises as fully, amply and effectually, to all intents and pur-
    poses as " the principal, " if present, ought or might personally, although the mat-
    ter should require more special authority than is here comprised." *Held,* that
    the principal was bound by the covenants of warranty in a deed of land executed
    by the agent under this power.
The defendant conveyed to the plaintiff, by a warranty deed containing the usual
    covenants, land on both sides of a railroad, which land came to the defendant by
    devise from a person who conveyed to the railroad the land occupied by it, by a

deed in which he covenanted that he " and his heirs and assigns should make and maintain a sufficient fence through the whole length of that part of the railroad which ran through his farm, this covenant of maintaining the fence to be perpetual and obligatory upon me and all persons who shall become owners of the land on each side of said railroad." In an action brought by the plaintiff for breach of the covenant against incumbrances in the defendant's deed, by reason of this charge upon the land, the defendant requested the court to rule that if the land on one side of the railroad was divided into lots, one of which only adjoined the railroad, the burden of maintaining the fence would be a charge only upon that lot and not upon the remote lots not bounding on the railroad. The presiding judge ruled that in such case the burden of fencing would remain a charge upon all the lots, however conveyed by the plaintiff to different grantees in severalty. The jury found for the plaintiff and assessed damages to him. *Held,* that the ruling of the judge was erroneous, and that the defendant was entitled to a new trial on the question of damages.

CONTRACT upon the covenant against incumbrances contained in a deed from the defendants to the plaintiff dated May 24, 1866. After the former decision, reported 108 Mass. 175, the case was tried in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions in substance as follows :

The land in question is situated in New Bedford, and came to the defendants under the will of the late Timothy G. Coffin, and was a portion of his farm.

On April 6, 1839, the said Coffin conveyed a strip of land, fifty-five rods in length, and four and three tenths rods wide, running through the land in question, to the New Bedford and Taunton Railroad Company, by a deed which contained the following clause : " I the said T. G. Coffin hereby covenant that I and my heirs and assigns will make and maintain a sufficient fence through the whole length of that part of the railroad which runs through my farm, this covenant of maintaining the fence to be perpetual and obligatory upon me and all persons who shall become owners of the land on each side of said railroad." ·

The land conveyed by the defendants was that portion of the farm which lay west of a street called Acushnet Avenue, which runs nearly parallel with the railroad and at a distance of about one hundred and four rods easterly therefrom. About thirty acres thereof lay between the avenue and the railroad, and about nine acres on the other or westerly side of the railroad.

The plaintiff put in evidence the alleged deed of the defendants, which was executed by William R. Phillips, as their attor-

ney, and not by either of them personally.   To show the author-
ity of Phillips, the plaintiff put in evidence a power of attorney
executed by the defendants to Phillips, a copy of which is in the
margin.*

The defendants objected that this instrument gave Phillips no
sufficient authority to enter into the covenants for breach of which
the action was brought, and asked the judge to rule that the

---

" Know all men by these presents, that we, Winifred B. Coffin, of Nan-
tucket, in the State of Massachusetts, and Abby P. Waldron, of New York
City, in the State of New York, have constituted, ordained and made, and
in our stead and place put, and by these presents do constitute, ordain and
make, and in our stead and place put William Phillips of New Bedford,
in the State of Massachusetts, to be our true, sufficient and lawful attorney,
for us and in our names and stead, to sell and convey any and all the real
estate belonging to us situated in said New Bedford, and all our respective
rights, title and interest, in and to any and all said real estate, and to make,
execute and deliver all necessary deeds of conveyance of the same, said real
estate formerly belonged to the late Timothy G. Coffin, however the same may
be bounded ; also to pay all taxes on said estate, to lease said estate, and to
do any and all other acts in relation to said estate that our interest may re-
quire.   Giving and hereby granting unto our said attorney, full power and
authority in and about the premises ; and to use all due means, course and
process in the law, for the full, effectual and complete execution of the busi-
ness afore described; and in our name to make and execute due acquittance
and discharge ; and for the premises to appear, and the person of us, the con-
stituents, to represent before any governor, judges, justices, officers and min-
isters of the law whatsoever, in any court or courts of judicature, and there,
on our behalf, to answer, defend and reply unto all actions, causes, matters
and things whatsoever, relating to the premises.   Also to submit any matter
in dispute, respecting the premises, to arbitration or otherwise, with full power
to make and substitute, for the purposes aforesaid, one or more attorneys un-
der said attorney, and the same again at pleasure to revoke, and generally to
say, do, act, transact, determine, accomplish and finish all matters and things
whatsoever, relating to the premises, as fully, amply and effectually, to all
intents and purposes, as we the said constituents, if present, ought or might
personally, although the matter should require more special authority than is
herein comprised, we, the said constituents, ratifying, allowing and holding
firm and valid all and whatsoever our said attorney or our substitutes shall
lawfully do, or cause to be done, in and about the premises, by virtue of these
presents.

In witness whereof, we have hereunto set our hands and seals, this nine-
teenth day of April, in the year of our Lord one thousand eight hundred and
sixty-six."

plaintiff could not therefore maintain his action, and the judge so ruled.

The plaintiff thereupon contended that the defendants had since the execution of the deed ratified the instrument executed by their attorney by their own acts and doings other than by any written instrument under seal. The plaintiff was thereupon allowed to introduce oral evidence upon that point, the defendants objecting thereto. And this question was submitted to the jury under instructions which are not now material.

The plaintiff contended that the incumbrance was a charge, and would continue so to be upon all the land conveyed to the plaintiff, and not merely upon the land adjoining the railroad, however the whole land might be divided into lots by the plaintiff or his assigns, and conveyed to different persons in severalty. To this construction of the covenant the defendants objected, and requested the judge to rule, as a proper construction thereof, that there being about thirty acres on the east side of the railroad, if the plaintiff or his assigns should divide twenty-five acres of the land nearest to Acushnet Avenue and most remote from the railroad into convenient lots of one acre each, leaving a lot of land of about five acres next to and adjoining the railroad, the western boundary of which should be the entire length of the easterly line of the railroad, and the eastern boundary line thereof parallel thereto and extending from the southern to the northern line of the plaintiff's land, and then should convey each of those one acre lots to different persons, making twenty-five several owners of one acre of land each, each separated from the railroad by the said five acre lot, the incumbrance would not be a charge upon either of these one acre lots, but would remain only as a charge upon the five acre lot, and the burden of fencing, under the covenant, would be upon whomsoever was or became the owner of that five acre lot.

The judge refused so to rule; but ruled that the incumbrance would be and remain a charge upon the whole of the land granted to the plaintiff, and, in whatever form it might hereafter be divided into lots of any size and conveyed to different grantees, the incumbrance would still be a charge upon each separate lot, however remote from the railroad, and the burden of fencing would continue to be a charge in common upon every lot, and

upon each lot in common with all the other lots by whomsoevei owned.

The defendants made a similar request for ruling in regard to the land lying on the west side of the railroad; which was refused. The defendants also asked the judge to rule that the covenant to maintain a fence on the west side of the railroad by the terms of Coffin's deed did not constitute an incumbrance on the land lying on the east side of the railroad. The judge refused so to rule, and ruled that it did constitute an incumbrance on all the plaintiff's land on the east side of the railroad as well as on the west side, however it might be divided and whoever became owners thereof.

The jury returned a verdict for the plaintiff, assessing the damages in the sum of $1500; and the defendants alleged exceptions.

*J. Brown*, for the defendants.

*T. M. Stetson*, for the plaintiff.

MORTON, J. The power of attorney from the defendants to William R. Phillips is very broad and comprehensive. It gives him power " to sell and convey any and all the real estate belonging to us situated in said New Bedford, and all our respective rights, title and interest, in and to any and all said real estate, and to make, execute and deliver all necessary deeds of conveyance of the same;" also " to pay all taxes on said estate, to lease said estate, and to do any and all other acts in relation to said estate that our interest may require;" to use all due means for the complete execution of the business afore described; to appear for and represent the constituents in any actions relating to the premises, to submit any matter respecting the premises to arbitration; and generally to do "all matters and things whatsoever relating to the premises, as fully, amply and effectually, to all intents and purposes, as we the said constituents, if present, ought or might personally, although the matter should require more special authority than is herein comprised." We are of opinion that this power gives the attorney authority to sell the land and to execute and deliver deeds containing the usual covenants of warranty. A naked power to sell land may not give the attorney power to bind the principal by any covenants. But the power of attorney in this case is broader than a mere power to sell. It gives the

attorney power to sell and to make all necessary deeds of conveyance, to pay the taxes, to make leases, to appear in and defend suits, to submit to arbitration any matter respecting the estate, and generally to do any acts in relation to the estate which the interest of the principals required. It seems to have been the intention of the principals to intrust the management and disposal of their estate to the attorney, and to authorize him to make such deeds and to do such acts as in his judgment would be most for their benefit. We think he was authorized to give the deed to the plaintiff, which is in the form usually adopted in conveying real estate and contains the usual covenants.

It is difficult to reconcile the decisions of the courts of other states upon this subject. The case of *Nixon* v. *Hyserott*, 5 Johns. 58, is opposed to the view we have taken. But that view is supported by the well considered cases of *Le Roy* v. *Beard*, 8 How. 451, and *Peters* v. *Farnsworth*, 15 Vt. 155. In each of these cases, the power of attorney, which the court was called upon to construe, differed from the power in the case at bar, but the reasoning and principles of construction there stated strongly support the construction we have adopted.

As the attorney had authority, by virtue of his power, to bind the defendants by the covenants in the deed to the plaintiff, it follows that the question raised at the trial, as to the ratification by the defendants of the act of the attorney, was immaterial, and it is not necessary to consider the rulings of the court in regard to it.

At the trial the plaintiff contended that the burden of maintaining the fence " was a charge and would continue so to be, upon all the land conveyed to the plaintiff, and not merely upon the land adjoining the railroad, however the whole land might be divided into lots by the plaintiff or his assigns and conveyed to different persons in severalty."

To meet this argument, the defendants requested the court to rule, in substance, that if the plaintiff should divide the land now owned by him into lots and should sell the lots remote from the railroad, leaving a lot intervening between them and the railroad, the burden of maintaining the fence would not attach to or be an incumbrance upon such remote lots. They also requested the court to rule that the covenant to maintain a fence

on the west side of the railroad did not constitute an incumbrance upon the land on the east side.

The presiding judge refused these requests, and ruled that the incumbrance was a charge upon the whole of the land granted to the plaintiff, and if the land was divided into lots which were conveyed to different grantees, the burden of maintaining the fence would continue to be a charge upon each and every lot however remote from the railroad.

This presents the question, adverted to but not decided in the former opinion in this case, as to the effect of a covenant which runs with the land, as against an assignee of part of the land charged with the burden ; and we are of opinion that the instructions upon this question were erroneous. In cases of covenants running with land, the assignee of the covenantor is bound, not by reason of any privity of contract with the covenantee, but solely by reason of his privity of estate. As stated in the former opinion, " in order to make a covenant run with the land of the covenantor and bind his heirs and assigns, the covenantee must, according to all the authorities, have such an interest in that land as to amount to a privity of estate between the parties to the covenant." 108 Mass. 180. And it was held that the terms of Coffin's deed conveyed to his grantees an interest in the nature of an easement in his adjoining lands, and thus created a sufficient privity of estate between them and his assigns to support the covenant to maintain the fence as a covenant running with the lands adjoining. The covenant runs with the adjoining land of the grantor, not because such land is regarded as a security for the performance of the covenant, but because he, exercising his rights as owner, has qualified and restricted the mode of occupying and enjoying the land retained, and has imposed upon it a servitude for the benefit of his grantees. It runs with the land to which the servitude is attached, but no further. If the grantor or his assign should sell a portion of the whole lot, so situated that the easement or servitude, from its nature, would not attach to or affect it, we see no reason why the covenant should run with such portion.

Suppose, for instance, the owner of a large tract of land should sell a part of it and covenant that his grantee should enjoy a right of way, defined by metes and bounds, over the land retained

by him, and should afterwards sell a lot remote from the way. The covenant is one which runs with the land, but upon what principle can it run with such remote lot so as to bind the purchaser? The way does not touch this lot; it is not an incumbrance or easement upon it. There is no privity of estate between such purchaser and the original covenantee or his assigns. The easement which is the medium which creates the privity of estate does not attach to or affect his land.

The same considerations apply to the case at bar. In the case supposed in the instructions given to the jury, the remote lot has no duty or obligation, inherent in or incident to it, as to the fence between the railroad and the intervening lot.

Under our laws, the owner is required to maintain one half of the division fence between his lot and the lot adjoining it; but whether a fence is maintained between such adjoining lot and the railroad does not concern or affect his land. The easement, or servitude in the nature of an easement, which Coffin imposed upon his land adjoining the railroad, is in its nature such, that it does not reach or affect the remote lot after a division, and the covenant in support of it does not relate to the mode of occupying and enjoying such lot.

There is therefore no privity of estate between the owner and the original covenantee, and it follows that he cannot be held liable on the covenant.

It is true that this question did not properly arise at the trial. The plaintiff owns all the land retained by Coffin on both sides of the railroad, and by reason of his ownership of the adjoining land is bound by the covenant to maintain all the fence. But the argument of counsel and the instructions of the court upon this point would naturally tend to mislead the jury and inflame the damages, and therefore we think there should be a new trial. As however the question of the defendants' liability has been fairly tried, the case should be opened only upon the question of damages. *Exceptions sustained.*