JAMES A. NORCROSS & another *vs.* WILLIAM JAMES
& another.

Hampden.    Sept. 23. — Oct. 23, 1885.    FIELD, C. ALLEN, & GARDNER,
JJ., absent.

K. conveyed to F. a quarry in L., bounded by other land of K., with a covenant as
    follows : "And I do for myself, my heirs, executors, and administrators, cove-
    nant with the said F., his heirs and assigns, that I will not open or work, or
    allow any person or persons to open or work, any quarry or quarries on my
    farm or premises in said L." By mesne conveyances A. became possessed of
    the quarry conveyed to F., and B. of the surrounding land referred to in the
    covenant ; and A. brought a bill in equity to restrain B. from quarrying stone
    on his land. *Held*, that the bill could not be maintained.

HOLMES, J.    One Kibbe conveyed to one Flynt a valuable
quarry in Longmeadow, of six acres, bounded by other land of
the grantor, with covenants as follows : " And I do for myself,
my heirs, executors, and administrators, covenant with the said
Flynt, his heirs and assigns, that I am lawfully seised in fee of
the afore-granted premises, that they are free of all incumbran-
ces, that I will not open or work, or allow any person or persons
to open or work, any quarry or quarries on my farm or prem-
ises in said Longmeadow."    By mesne conveyances the plain-
tiffs have become possessed of the quarry conveyed to Flynt,
and the defendants of the surrounding land referred to in the
covenant.    The defendants are quarrying stone in their land,
like that quarried by the plaintiffs ; and the plaintiffs bring this
bill in equity for an injunction.

The discussion of the question under what circumstances a
landowner is entitled to rights created by way of covenant with
a former owner of the land, has been much confused since the
time of Lord Coke, by neglecting a distinction, which he stated
with perfect clearness, between those rights which run only
with the estate in the land and those which are said to be
attached to the land itself : " So note a diversity between a
use or warranty, and the like things annexed to the estate of
the land in privity, and commons, advowsons, and other here-
ditaments annexed to the possession of the land." *Chudleigh's
case*, 1 Rep. 120 a, 122 b ; *S. C. nom. Dillon* v. *Fraine*, Poph.
70, 71.

Rights of the class represented by the ancient warranty, and now by the usual covenants for title, are pure matters of contract, and from a very early date down to comparatively modern times lawyers have been perplexed with the question how an assignee could sue upon a contract to which he was not a party. West, Symboleog. I. sect. 35. Wingate's Maxims, 44, pl. 20, 55, pl. 10. Co. Lit. 117 a. *Finch's case*, 4 Inst. 85. But an heir could sue upon a warranty to his ancestor, because for that purpose he was *eadem persona cùm antecessore*. See Y. B. 20 & 21 Ed. I. 232 (Rolls ed.); *Overton* v. *Sydall*, Poph. 120, 121; *Oates* v. *Frith*, Hob. 130; *Bain* v. *Cooper*, 1 Dowl. Pr. Cas. (N. S.) 11, 14. And this conception was gradually extended, in a qualified way, to assigns, where they were mentioned in the deed. Bract. fol. 17 b, 67 a, 380 b, 381. Fleta, III. *c.* 14, § 6. 1 Britton, (Nich. ed.) 255, 256. Y. B. 20 Ed. I. 232–234 (Rolls ed.). Fitz. Abr. Covenant, pl. 28. Vin. Abr. Voucher, N, p. 59. Y. B. 14 Hen. IV. 56; 20 Hen. VI. 34 b. Old Natura Brevium, Covenant, 67, B, C, in Rastell's Law Tracts, ed. 1534. Doct. & Stud. Dial. 1, *c.* 8. F. N. B. 145, C. Co. Lit. 384 b. Com. Dig. Covenant, B, 3. *Middlemore* v. *Goodale*, Cro. Car. 503; *S. C.* ib. 505; W. Jones, 406. *Philpot* v. *Hoare*, 2 Atk. 219.

But in order that an assignee should be so far identified in law with the original covenantee, he must have the same estate, that is, the same status or inheritance, and thus the same *persona, quoad* the contract. The privity of estate which is thus required is privity of estate with the original covenantee, not with the original covenantor; and this is the only privity of which there is anything said in the ancient books. See, further, Y. B. 21 & 22 Ed. I. 148 (Rolls ed.); 14 Hen. VIII. 4, pl. 5. Of course, we are not now speaking of cases of landlord and tenant, and it will be seen that the doctrine has no necessary connection with tenure. F. N. B. 134, E. We may add, that the burden of an ordinary warranty in fee did not fall upon assigns, although it might upon an heir, as representing the person of his ancestor. Y. B. 32 & 33 Ed. I. 516 (Rolls ed.).

On the other hand, if the rights in question were of the class to which commons belonged, and of which easements are the most conspicuous type, these rights, whether created by prescription, grant, or covenant, when once acquired, were attached

to the land, and went with it, irrespective of privity, into all hands, even those of a disseisor. "So a disseisor, abator, intruder, or the lord by escheat, &c. shall have them as things annexed to the land." *Chudleigh's case, ubi supra.* See 1 Britton, (Nich. ed.) 361; Keilw. 145, 146, pl. 15; F. N. B. 180, N; *Nevil's case,* Plowd. 377, 381. In like manner, when, as was usual, although not invariable, the duty was regarded as falling upon land, the burden of the covenant, or grant, went with the servient land into all hands, and of course there was no need to mention assigns. See cases *supra et infra.* The phrase consecrated to cases where privity was not necessary was *transit terra cum onere.* Bract. fol. 382 a, b. Fleta, VI. *c.* 23, § 17. See Y. B. 20 Ed. 1. 360 (Rolls ed.); Keilw. 113, pl. 45. And it was said that "a covenant which runs and rests with the land lies for or against the assignee at the common law, *quia transit terra cum onere,* although the assignee be not named in the covenant." *Hyde* v. *Dean of Windsor,* Cro. Eliz. 552; *S. C.* ib. 457*; 5 Rep. 24 a; Moore, 399.

It is not necessary to consider whether possession of the land alone would have been sufficient to maintain the action of covenant: it is enough for our present purposes that it carried the right of property. Neither is it necessary to consider the difficulties that have sometimes arisen in distinguishing rights of this latter class from pure matters of contract, by reason of their having embraced active duties as well as those purely passive and negative ones which are plainly interests carved out of a servient estate and matters of grant. The most conspicuous example is *Pakenham's case,* Y. B. 42 Ed. III. 3, pl. 14, where the plaintiff recovered in covenant as terre-tenant, although not heir, upon a covenant or prescriptive duty to sing in the chapel of his manor. *Spencer's case,* 5 Rep. 16 a, 17 b. Another, which has been recognized in this Commonwealth, is the quasi easement to have fences maintained. *Bronson* v. *Coffin,* 108 Mass. 175, 185; *S. C.* 118 Mass. 156. Repairs were dealt with on the same footing: they were likened to estovers and other rights of common. 5 Rep. 24 a, b. *Hyde* v. *Dean of Windsor, ubi supra.* See F. N. B. 127; *Spencer's case, ubi supra; Ewre* v. *Strickland,* Cro. Jac. 240; *Brett* v. *Cumberland,* 1 Roll. R. 359, 360; and other examples might be given. See Bract. 382 a, b; Fleta, VI. *c.* 23, § 17;

Y. B. 20 Ed. I. 360; Keilw. 2 a, pl. 2; Y. B. 6 Hen. VII. 14 b, pl. 2; Co. Lit. 384 b, 385 a; *Cockson* v. *Cock*, Cro. Jac. 125; *Bush* v. *Cole*, 12 Mod. 24; *S. C.* 1 Salk. 196; 1 Show. 388; Carth. 232; *Sale* v. *Kitchingham*, 10 Mod. 158. The cases are generally landlord and tenant cases, but that fact has nothing to do with the principles laid down.

When it is said that in this class of cases there must be a privity of estate between the covenantor and the covenantee, it only means that the covenant must impose such a burden on the land of the covenantor as to be in substance, or to carry with it, a grant of an easement or quasi easement, or must be in aid of such a grant (*Bronson* v. *Coffin, ubi supra*); which is generally true, although, as has been shown, not invariably (*Pakenham's case, ubi supra*); and although not quite reconcilable with all the old cases except by somewhat hypothetical historical explanation. But the expression "privity of estate" in this sense is of modern use, and has been carried over from the cases of warranty, where it was used with a wholly different meaning.

In the main, the line between the two classes of cases distinguished by Lord Coke is sufficiently clear; and it is enough to say, that the present covenant falls into the second class, if either. Notwithstanding its place among the covenants for title, it purports to create a pure negative restriction on the use of land, and, for the moment, we will take it as intended to do so for the benefit of the land conveyed.

The restriction is, in form, within the equitable doctrine of notice. *Whitney* v. *Union Railway*, 11 Gray, 359. *Parker* v. *Nightingale*, 6 Allen, 341. *Beals* v. *Case*, 138 Mass. 138. See *Austerberry* v. *Oldham*, 29 Ch. D. 750; *London & South Western Railway* v. *Gomm*, 20 Ch. D. 562; *Haywood* v. *Brunswick Building Society*, 8 Q. B. D. 403; *Tulk* v. *Moxhay*, 2 Phillips, 774. But, as the deed was recorded, it does not matter whether the plaintiff's case is discussed on this footing, or on that of easement, if there is any difference so far as the present point is concerned.

The question remains, whether, even if we make the further assumption that the covenant was valid as a contract between the parties, it is of a kind which the law permits to be attached to land in such a sense as to restrict the use of one parcel in all

hands for the benefit of whoever may hold the other, whatever the principle invoked. For equity will no more enforce every restriction that can be devised, than the common law will recognize as creating an easement every grant purporting to limit the use of land in favor of other land. The principle of policy applied to affirmative covenants applies also to negative ones. They must "touch or concern," or "extend to the support of the thing" conveyed. 5 Rep. 16 a, 24 b. They must be "for the benefit of the estate." Cockson v. Cock, ubi supra. Or, as it is said more broadly, new and unusual incidents cannot be attached to land, by way either of benefit or of burden. Keppell v. Bailey, 2 Myl. & K. 517, 535. Ackroyd v. Smith, 10 C. B. 164. Hill v. Tupper, 2 H. & C. 121.

The covenant under consideration, as it stands on the report, falls outside the limits of this rule, even in the narrower form. In what way does it extend to the support of the plaintiff's quarry? It does not make the use or occupation of it more convenient. It does not in any way affect the use or occupation; it simply tends indirectly to increase its value, by excluding a competitor from the market for its products. If it be asked what is the difference in principle between an easement to have land unbuilt upon, such as was recognized in Brooks v. Reynolds, 106 Mass. 31, and an easement to have a quarry left unopened, the answer is, that, whether a difference of degree or of kind, the distinction is plain between a grant or covenant that looks to direct physical advantage in the occupation of the dominant estate, such as light and air, and one which only concerns it in the indirect way which we have mentioned. The scope of the covenant and the circumstances show that it is not directed to the quiet enjoyment of the dominant land.

Again, this covenant illustrates the further meaning of the rule against unusual incidents. If it is of a nature to be attached to land, as the plaintiff contends, it creates an easement of monopoly, — an easement not to be competed with, — and in that interest alone a right to prohibit an owner from exercising the usual incidents of property. It is true that a man could accomplish the same results by buying the whole land, and regulating production. But it does not follow, because you can do a thing in one way, that you can do it in all; and we think that, if

this covenant were regarded as one which bound all subsequent owners of the land to keep its products out of commerce, there would be much greater difficulty in sustaining its validity than if it should be treated as merely personal in its burden. Whether the latter is its true construction, as well as its only legal operation, and whether, so construed, it is or is not valid, are matters on which we express no opinion. See further *Brewer* v. *Marshall*, 4 C. E. Green, 537; *Taylor* v. *Owen*, 2 Blackf. 301; *Thomas* v. *Hayward*, L. R. 4 Ex. 311. *Bill dismissed.*

*J. G. Dunning*, for the plaintiff. 1. The covenant, as to quarrying, contained in the deed of Kibbe to Flynt, is a covenant running with the land; and, as such, is binding on the heirs and assigns of the covenantor, in favor of the heirs and assigns of the covenantee. *Bronson* v. *Coffin*, 108 Mass. 175. *Hills* v. *Miller*, 3 Paige, 254. *Norman* v. *Wells*, 17 Wend. 136, 147. *Platt* v. *Eggleston*, 20 Ohio St. 414.

2. The effect of said covenant was to create an easement in the land to which it related. Although a covenant, when regarded as a contract, is binding only as between the original parties, yet in order to give effect to their intention, it may be considered in equity as creating an incorporeal hereditament, in the nature of an easement, in the unconveyed estate, and rendering it appurtenant to the estate conveyed. *Morse* v. *Aldrich*, 19 Pick. 449. *Savage* v. *Mason*, 3 Cush. 500. *O'Neil* v. *Holbrook*, 121 Mass. 102. *Roche* v. *Ullman*, 104 Ill. 11. *Fitch* v. *Johnson*, 104 Ill. 111.

3. An easement may consist either in suffering something to be done, or in abstaining from doing something, upon the servient tenement. 3 Kent Com. (6th ed.) 419. Washburn on Easements, (2d ed.) 4, 5. Gale on Easements, (4th ed.) 5.

4. There is a privity of estate through the medium of the easement created by the covenant; and also through the medium of the easement of the right of way. *Bronson* v. *Coffin*, and *Hills* v. *Miller*, *ubi supra.*

5. So far as creating a privity of estate is concerned, it is immaterial whether the easement is already existing, or is created by the covenant. *Bronson* v. *Coffin*, *ubi supra.*

6. The operation of the covenant being confined by its terms to a particular place, the covenant is not open to objection as

being in total restraint of business, or as creating a monopoly, but only in partial restraint of business, for which an ample consideration was given. The covenant was only a fair protection to the interests of the party in whose favor it was made, and is not so broad as to interfere with the rules of public policy. *Mitchel* v. *Reynolds*, 1 P. Wms. 181. *Stearns* v. *Barrett*, 1 Pick. 443. *Palmer* v. *Stebbins*, 3 Pick. 188. *Pierce* v. *Woodward*, 6 Pick. 206. *Gilman* v. *Dwight*, 13 Gray, 356.

*C. L. Long*, for the defendant.