WILLIAM H. KING & others *vs.* EMERSON WIGHT.

Hampden.    September 22, 1891. — January 12, 1892.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Party Wall — Covenant running with the Land.*

A party wall agreement under seal between adjoining lot-owners, which was duly acknowledged and recorded, provided that either party desiring to build upon his land might place the division wall of a certain thickness one half on the land of each, and of any length or height desired; that the other party, upon using the wall in building upon his own land, should pay one half the expense of

erecting the wall to the extent of his use; that the party erecting the wall should place flues therein where indicated by the other; and that the agreement should bind them and their " heirs, assigns, and representatives forever." *Held,* that the agreement created mutual covenants enforceable by a successor in title of the party erecting such a wall against the other's successor in title, upon his using the same.

CONTRACT, to recover for the use of a party wall. At the trial in the Superior Court, without a jury, before *Mason*, C. J., the following facts were agreed.

On April 18, 1874, Eliza H. Pease and Frances A. Burt, being owners of adjoining tracts of land on Worthington Street, in Springfield, entered into an agreement under seal, which was duly acknowledged and recorded, as follows:

" It is agreed for valuable considerations moving between the parties as follows. They are owners of adjoining lands on the northeasterly side of Worthington Street, in the city of Springfield, Mass. If either party shall desire to build upon his or her own land, the division wall between the parties may be built by either party, one half on the land of each, and to such height and length as either party may desire to build on his or her own land. Whenever the other party shall desire to build on his land, and shall use the party wall so built by the party first building, he or she shall pay to the party having built the said wall one half the expense of erecting said wall to the extent he or she may use said wall, and which expense, unless the parties agree, shall be fixed by three competent appraisers. The wall shall not exceed twenty inches in thickness in the basement, sixteen inches in the first story, and twelve inches above, unless greater thickness shall be hereafter required by the fire department. The party erecting said wall shall place flues so as to accommodate the party upon the other side of such places as the other may require. This agreement shall bind ourselves, our heirs, assigns, and representatives forever."

The plaintiffs were the successors in title of Mrs. Burt, and the defendant the successor of Mrs. Pease. Between the date of the agreement and the following August, Mrs. Burt erected a division wall between the lots pursuant to the agreement. In 1888 the defendant erected a block upon his land, using the whole of the one half of the wall which stood on his land, and had continued to use the whole of such half; but, after a demand

duly made upon him, had refused to pay for the same, on the ground that he owned that half of the wall, and was not liable to pay for the same.

The defendant requested the judge to rule that upon these facts the plaintiffs could not recover, but the judge refused so to rule, and found for the plaintiffs; and the defendant alleged exceptions.

*G. Wells*, for the defendant.

*A. Webster*, for the plaintiffs.

MORTON, J. We can have no doubt that Mrs. Burt and Mrs. Pease intended by their agreement to bind and benefit their respective estates, into whosesoever hands they might come, and did not intend a merely personal contract between themselves. The structure to be built was to be permanent, and was designed to serve as a partition wall between two adjoining blocks, and was to stand one half on the land of each owner, and was to have flues where one party or the other, as the case might be, should direct. There was nothing which limited the building of the wall to the parties to the agreement, or during their ownership of their respective premises. On the contrary, it is expressly provided that the agreement shall be binding on them and their heirs and assigns forever, meaning clearly that the heirs and assigns of each shall succeed with the estate to the same rights and liabilities under the agreement which their predecessor in title had or might have. If, for instance, neither Mrs. Burt nor Mrs. Pease built the wall, then the heirs or assigns of either might build it as provided in the agreement, and with the same rights on the part of the adjoining landowners to use it, and upon using it the same liability to pay for one half of its cost, as would have arisen if it had been built by Mrs. Burt and used by Mrs. Pease, or *vice versa*. Such being the purpose of it, the next question is whether the agreement, as thus construed, can be carried into effect. We think it can be, and that it creates mutual covenants running with each lot. The form of the instrument is plainly sufficient. It is under seal, binds the heirs and assigns of the respective parties, and is duly acknowledged and recorded. The fact that it does not purport in terms to create covenants running with the land is not of much moment. The effect of the instrument is to be gathered from it as a

whole. Where one party covenants with another in respect of land, and at the same time with and as a part of making the covenant neither parts with or receives any title or interest in the land, nor creates an easement or a right in the nature of an easement for the benefit of the land, such a covenant is at best but a mere personal contract. *Morse* v. *Aldrich*, 19 Pick. 449. *Savage* v. *Mason*, 3 Cush. 500. *Bronson* v. *Coffin*, 108 Mass. 175, and 118 Mass. 156. *Norcross* v. *James*, 140 Mass. 188, 190.

In the present case the agreement created an easement of use and support in favor of each lot-owner, and her successors in title, in the half of the wall which stood on the other lot, and in the land under the same. Each lot of land became entitled, therefore, to the benefits and subject to the burdens arising from the covenants contained in the agreement, and relating to the erection and maintenance of the wall. They inhered in and belonged to it. The burdens and the benefits were inseparably connected, and the defendant could no more avoid paying to the successors in title of Mrs. Burt for one half of the wall when he sought to use it, than he could prevent the wall from standing when it had been built, assuming that it was built one half on each lot. In this view of the case it is not necessary to consider whether the defendant would be liable, as upon an undertaking to pay the cost of one half of the wall to whomsoever should be the owner of the adjoining lot when he should desire to use the half of the wall on his side. See *Maine* v. *Cumston*, 98 Mass. 317; *Standish* v. *Lawrence*, 111 Mass. 111; *Richardson* v. *Tobey*, 121 Mass. 457; *Martin* v. *Drinan*, 128 Mass. 515.

We understand the defendant practically to concede that, if we should be of opinion that the agreement creates covenants running with the land, then the plaintiffs are entitled to recover. At any rate he contends that the plaintiffs cannot recover unless the covenants contained in the agreement do run with the land. For the reasons given above we think they do; and the entry must be, therefore,

*Exceptions overruled.*