Riley, J.
These two actions of tort were tried at the same time and argued together before this division. The plaintiff seeks compensation for the repairs which it made of damage to the party wall on the boundary line of its property with that of the defendant City of Boston. The first action is against the City of Boston, the owner, in possession of the adjoining property which had recently contained a fire house ; the second action is against the New England Building Wrecking Company, a contracting concern employed by the said City of Boston tO' raze the fire house, and *248 whose agents, servants or employees did the physical damage complained of.
The declaration in each case contains two counts, one alleging trespass, the other negligence. The City of Boston by answer avers a general denial; that the plaintiff controlled and maintained a defective, unsafe and dangerous building in violation of law; that the plaintiff was contributorily negligent; and that the work of demolition or razing of its property (the Bristol Street Fire House) resulted from the act of a public officer (the Building Commissioner of'the City of Boston) for whose acts the City of Boston, as a municipal corporation, is not liable.
The New England Building Wrecking Company by answer avers a general denial, and that the plaintiff was contributorily negligent.
On the evidence given at the trial, the trial judge could warrantably have found that the City of Boston owned a lot of land in Boston, at the corner of Bristol Street and Harrison Avenue, together with the building thereon which was known as the Bristol Street Fire House, but that previous to the time of the occurrence of the acts of which the plaintiff herein complains, the building had ceased to be used as a fire house; that the plaintiff, Hub Laundry Company, was the owner and in possession of the lot and building thereon, adjoining and abutting the fire house property on the Bristol Street side; that the fire house building was erected in the year 1874, and the building housing the laundry about the year 1900; that on August 15, 1900, the then owners of record of the two parcels of real estate above described, the City of Boston, and the predecessor in title of the property now occupied by the Hub Laundry Company, entered into an agreement relating to the building of a party wall and providing therein that the then existing walls should constitute a party wall.
*249 That the party wall, now in issue, was twelve inches in width; that the fire house building was out of repair and dangerous in the opinion of the Building Commissioner of the City of Boston; that the entire proceedings relative to the razing of the fire house were contained in two letters from the Building* Commissioner directed to the Mayor of Boston, together with a written contract between the City of Boston and the New England Building Wrecking Company; that upon completion of the work of razing the fire house the wall here in issue was left standing, but that on the fire house side thereof some bricks at the corner of Bristol Street were left jagged and broken while other bricks were missing*; that such condition extended to a height of 28 or 30 feet from the ground and resulted from the cutting or breaking of bricks by those engaged in razing ■the building; that a similar condition existed at the far end of the same wall, the end farthest from Bristol Street; that a decorative slab of granite was left hanging out along* the building line parallel with the sidewalk at a point one or two stories above the ground; that immediately after the fire house had been taken down a building inspector of the City of Boston notified the Hub Laundry Company that the wall was dangerous and ordered it to repair the same; that the Hub Laundry Company complied with the order by repairing the wall, and that the expense incurred in so doing constituted the damage suffered by it as the result of the trespass to its easement by the City of Boston and the New England Building Wrecking Company.
The trial judge found for the plaintiff in each action on the count in trespass and assessed damages in the sum of $526.00.
At the close of the trial the parties filed requests for rulings of law which the trial judge acted upon. The re *250 spective defendants claim to be aggrieved by the trial judge’s denial of certain of its requests, and bring these reports.
We will discuss the City of Boston’s alleged grievance first. Its requests numbered 1, 6,11 and 12 which the trial judge denied were properly treated, as they were predicated on evidence of negligence and had no application to the count in trespass, upon which the general finding in each case was made. Requests numbered 4, 13 and 17 were denied, and we believe properly so, as they were not correct statements of law. The remaining requests numbered 2, 3, 7, 8, 9,10, 14, 15, 16, 18 and 19, all of which were denied, are pointed to a single contention, — that the Building Commissioner of the City of Boston while engaged in accomplishing the razing of the fire house, was acting as a public officer.
As the corporation counsel of said City has only seen fit to brief and argue the requests numbered 10, 16, 18 and 19, we will confine our discussion to those requests. The statement of such counsel before this division, that although he would not discuss the other requests which he had not briefed, he expected they would be considered and did not want them to be treated as waived, can neither be subscribed to, nor approved. The court is entitled to some help in solving the problems presented to it, and in accordance with the established practice of the Supreme Judicial Court, requests neither briefed nor argued must be treated as having been waived. Guinan v. Famous Players-Lasky Corp., 267 Mass. 501, 519. City of Boston v. Dolan, 298 Mass. 346, at 355, 356. Reduced to their lowest terms the four requests of the City of Boston which it has seen fit to brief and argue all point to a single contention, namely: that the man who ordered or directed the razing of the *251 building owned by the City of Boston, and who executed the contract with the New England Building Wrecking Company on behalf of the said city, was, while so engaged, acting as a public officer for whose acts the City of Boston as a municipality would not be liable; and that he was not acting as an agent of the said city.
The only evidence contained in the reports now before us, tending to show whether or not the Building Commissioner was acting as a public officer in ordering or directing* the razing* of the city owned building was that contained in two letters both written on stationery of the Building Department of the City of Boston, signed by said Building Commissioner; directed to the Mayor of Boston and each endorsed with the approval of the Mayor; and in a written contract between the City of Boston and the New England Building* Wrecking* Company. These letters and the contract were introduced in evidence by the defendant City of Boston, as evidence tending to show and prove that the Building Commissioner was acting* as a public officer.
There being* no suggestion of ambiguity in the terms of such writings and no testimonial evidence adduced, they were offered and accepted by the trial judge as the sole repository of the evidence on that question. Palmer v. Clark, 106 Mass. 373, 387. While the determination of the existence of agency is usu'ally a question of fact, when, however, the only evidence tending* to prove agency is that contained in writings introduced in evidence and uncontroverted, the construction of such writings like that of any agreement or contract, oral or written where the terms are undisputed is to be determined by the court. Whittaker v. Brookline, Mass. Adv. Sh. (1945) 377 at 380, 381.
Hence, upon such documentary evidence and the reasonable inference to be drawn therefrom, the trial judge found and ruled that the Building Commissioner, in connection *252 with the razing of the fire house, was acting as an agent of the City of Boston and not as a public officer under statute. Thayer v. Boston, 19 Pickering 511; Hawks v. Charlemont, 107 Mass. 414, 417; Ryder v. Lexington, 303 Mass. 281. He appears to have construed the meaning of the words employed, according to the general usage of speech, and in so doing, we believe he committed no error in the disposition he made of the requests filed by the defendant City of Boston.
Before leaving the alleged grievance of the City of Boston, a further word should be said. In argument before this division counsel for City of Boston stressed and dwelt on the following statement appearing in the reports: “After some colloquy between counsel, the plaintiff agreed that the fire house was legally torn down and f allowing the order of the Building Commissioner”: He contends that such statement amounted to an admission that there was no act of trespass and that the Building Commissioner was acting as >a public officer.
The most that we can understand that statement to mean is, that the plaintiff’s counsel stated in open court that the fire house was taken down by a contractor employed by the City of Boston, the owner, for that specific purpose and that by so doing the City of Boston, its ¡agents or contractor were simply doing something that they had a right to do. This action does not dispute the right of the city to remove one of its buildings, but rather complains of the manner in which it was done. The' statement did not determine whether or not there had been a trespass committed, nor did it decide in what capacity the Building Commissioner was acting.
We treat now of the requests filed by the defendant New England Building Wrecking* Company, by the denial of *253 which it claims to be aggrieved. It appears that those numbered three and four were properly denied as being inconsistent one with the other; that those numbered 5 to 10 both inclusive, are all directed to the question of what were the respective interests of the parties under the party wall agreement.
The reports establish the City of Boston and the Hub Laundry Company to be owners of, and in possession of, their respective parcels of land involved and the subject matter of the party wall agreement, which is in evidence and uncontroverted. It became the duty of the trial judge to determine the type of party wall provided for within the four corners of the written agreement then before him. King v. Wright, 155 Mass. 444. This the trial judge apparently did by his statement “I find that it was a party wall”, which statement must be read in the light of what it really is, a ruling of law. The existence and contents of the party wall agreement was not disputed, but in fact relied upon by the parties.
The term party wall has no uniform meaning, for it is used loosely to describe any one of at least four different situations. It may mean first, a wall where the two adjoining owners are tenants in common of the land on which the wall rests, consequently of the wall itself. Second, the term is used to describe this situation. A wall, the ownership of which is divided longitudinally into two strips, one belonging to each of the two adjoining owners, and erected upon the dividing line, half on the land of one tenant -and half on the land of another, and in the absence of a party wall agreement or mutual conveyances each owner may do what he pleases with his half so long as he does not interfere with the other half. Third, the term is used where the party wall is wholly on the land of the owner, and conse *254 quently belongs wholly to him, but is subject to an easement or right to use in the other owner. The fourth sense in' which the term is used is where the wall is half on the land of one owner and half on the land of the other, so that each owner owns half of the wall and has an easement in the other half, the respective owners owning their own half of the wall and the land under it, the dividing line being the center.
The wording contained in the agreement appearing in these reports, clearly places such agreement within the fourth sense in which the term party wall is used, as described above, and the trial judge properly construed it in accordance with such sense; that being the effect commonly given in America to a party wall agreement and so construed when possible. This agreement contains specific language indicating ownership in severalty subject to cross easements. Reeves-Real Property (1909) vol. 1, secs. 211-218; 9 Columbia Law Review p. 74. 37 Harvard Law Review p. 305. The denial of its requests was free from error.
The contention of the New England Building Wrecking Company, appearing in its requests, that the Hub Laundry Company owns no part of the City of Boston’s half of the wall, while correct, appears to overlook the easement which each party has in the other’s half of the wall by virtue of the agreement. It is for damage to such easement that the plaintiff in these actions at law seeks the recovery of damages. Ingraham, v. Dunnell, 5 Metcalf 118, 124; Putney v. Lapham, 10 Cushing 232, 234; Hastings v. Livermore, 7 Gray 194. Frawley v. Forrest, 310 Mass. 446, 456. For an equity case enjoining the interference with an easement in a party wall see Phillips v. Bordman, 4 Allen 147. Accordingly, Report in each action dismissed.