SHELL OIL COMPANY & another *vs.* HENRY OUELLETTE & SONS CO., INC. & another.

Suffolk. April 6, 1967. — June 13, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Real Property,* Restriction, Covenant running with the land, Covenant against competition.

Following *Norcross* v. *James,* 140 Mass. 188, and *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, a covenant in a 1962 deed by the grantor, "for itself, its successors and assigns," that its remaining land adjacent to the land conveyed would not be "subject . . . to any use or occupation . . . competitive with" certain uses of the land conveyed was not enforceable, even in equity, by a successor in title of the grantees in such deed and by a lessee of the successor against the grantor and the holder of an option to purchase a part of the grantor's remaining land.

BILL IN EQUITY filed in the Superior Court on April 13, 1965.

The suit was reported by *Smith,* J.

*Bernard Helman* (*Terry E. Wilson,* of New York, with him) for the plaintiffs.

*Joseph P. Rooney* (*Richard M. Reilly* with him) for the defendant Socony Mobil Oil Company, Inc.

*Edward F. Cregg* for the defendant Henry Ouellette & Sons Co., Inc.

The Massachusetts Conveyancers Association, by *Fosdick P. Harrison,* and The Abstract Club, by *Albert B. Wolfe,* submitted a brief as amici curiae.

*W. Barton Leach,* amicus curiae, submitted a brief.

CUTTER, J. The principal plaintiff (Shell) seeks to enforce a restriction in a 1962 deed from Henry Ouellette & Sons Co., Inc. (Ouellette) to Gordon F. Bloom and others

(the trustees) which purports to restrict the uses to which Ouellette and its successors in title may put its remaining land adjacent to the land so conveyed. Stafac Inc. (Stafac), present owner of part of the land conveyed to the trustees by Ouellette in 1962, was allowed to intervene. Socony Mobil Oil Company (Mobil), the holder of an option to purchase a part of Ouellette's remaining land, is also named as a defendant.

The case was heard in the Superior Court upon the pleadings and a statement of agreed facts amounting to a case stated. The trial judge ruled that the alleged restriction in the 1962 deed "was personal, did not create a covenant running with the land, and does not inure to the benefit of remote or successive grantees." See *Norcross* v. *James*, 140 Mass. 188; *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180. He then reported the case for our decision.[1]

Ouellette owned about 100 acres of land in Methuen. By the 1962 deed, Ouellette conveyed about twenty acres of this land to the trustees. The deed contained the provision set out in the margin.[2]

---

[1] Because (1) the case involves important conveyancing questions and (2) Shell asks that we overrule the *Norcross* and *Shade* cases, we have afforded opportunity to The Abstract Club and Massachusetts Conveyancers Association to file a brief as amici curiae. They have done so by a useful joint brief, which on grounds of general conveyancing policy supports the rule in *Norcross* v. *James*. Professor W. Barton Leach has also filed a helpful brief as amicus curiae in which he urges this court at some time to overrule *Norcross* v. *James*.

[2] The provision (emphasis supplied) reads in part, "Grantor [Ouellette] for itself, *its successors and assigns* covenants . . . that the grantor's adjacent property . . . for a period of two years after the recording hereof will not be used . . . [then follow restrictions against certain retail use, not here relevant] or for a period of fifty years after the recording hereof will not be permitted to be used in whole or in part for the construction or in connection with the operation of a super market; or *for a period of fifteen years after such recording will not be subject in whole or in part to any use or occupation which at the time such use or occupation is commenced is competitive with any of the following uses of the premises hereby conveyed:* (a) *A use then being made, or a use which shall have been made, within the six months next prior thereto.* (b) An intended use under a then existing contract, provided that the then owner of record of said adjacent land has actual notice of such contract. The term 'use' as used in this paragraph (b) means a general use for a class of store. The grantor agrees that there shall be included in any deed by him or his representative of all or any part of said adjacent property similar restrictions on the uses of any part of said adjacent property, which restrictions shall be in effect for the then remainders of the respective durations of the restrictions above set forth."

By recorded deed dated April 30, 1963, the trustees conveyed to Shell a part of the land acquired by them under the 1962 deed.[3]   On March 30, 1964, Shell conveyed to Stafac the land which it had received from the trustees. Stafac leased the premises back to Shell.

Shell then with "knowledge of and taking into consideration the language in . . . the [1962] deed from Ouellette to the [t]rustees . . . at a cost . . . of more than $100,000, constructed an automobile service station."   This was completed on November 1, 1964, and has been in operation since that date.

On February 8, 1965, Ouellette granted to Mobil an option to buy part of Ouellette's remaining land for the construction of a gasoline service station.   Mobil has received from the town of Methuen a license for the storage and sale of gasoline products.   Shell on March 23, 1965, wrote to Mobil inviting its attention to the 1962 restrictions (fn. 2) and claiming the benefit for Shell of that restriction as preventing the establishment of a competing service station on Ouellette's land subject to the Mobil option.

The question is thus presented whether the benefit of the 1962 restrictions (fn. 2) accrues to Shell as lessee of a transferee from the trustees of a portion of the land conveyed to them by that 1962 deed.   Shell now attempts to enforce the restriction and to impose its burden upon Ouellette, the original grantor, and upon Mobil, a proposed transferee from Ouellette (with notice of the restriction) of a part of the land now subject to the 1962 restriction.

1.   The defendants contend that this case is controlled by *Norcross* v. *James,* 140 Mass. 188, in which in 1885, Mr. Justice Holmes spoke for this court.   One Kibbe had conveyed to one Flynt a quarry of six acres in Longmeadow bounded by other land of Kibbe.   The deed contained a covenant by Kibbe, "I . . . for myself, my heirs, executors, and administrators, covenant with . . . Flynt, his heirs and

---

[3] The deed of April 30, 1963, was later amended by agreement recorded in June 1963, under which the trustees and Shell agreed that the land conveyed to Shell by the trustees was conveyed "with the benefit of, but not subject to . . . [a] gasoline restriction" which had been included by the trustees in the deed to Shell of April 30, 1963.

assigns . . . that I will not open or work, or allow any person or persons to open or work, any quarry or quarries on my farm or premises in . . . Longmeadow.'' Norcross and another acquired Flynt's quarry. James and another became the owners of Kibbe's surrounding land and began to quarry stone on that land. Norcross sought to enjoin this activity. The bill was dismissed.

The question of current importance in the *Norcross* opinion (pp. 191–192), is whether, if it be assumed ''that the covenant [against opening a quarry on Kibbe's remaining farm] was valid as a contract between the parties, it is of a kind which the law permits to be attached to land in such a sense as to restrict the use of one parcel in all hands for the benefit of whoever may hold the other.'' The opinion goes on to say, '' [E]quity will no more enforce every restriction that can be devised, than the common law will recognize as creating an easement every grant purporting to limit the use of land in favor of other land. The principle of policy applied to affirmative covenants applies also to negative ones. They must 'touch or concern,' or 'extend to the support of the thing' conveyed. . . . They must be 'for the benefit of the estate.' . . . Or, as it is said more broadly, new and unusual incidents cannot be attached to land, by way either of benefit or of burden. . . . [This] covenant . . . falls outside the limits of this rule, even in the narrower form.''[4] The opinion thus holds principally (1) that a restriction of the use of land for the competitive benefit of adjacent land does not directly concern the use of the dominant parcel and operate to its advantage; and (2) that the benefit of the restriction will not so pass by a deed of

---

[4] The opinion continues (at p. 192), ''It [the covenant] does not make the use or occupation of . . . [the plaintiffs' quarry] more convenient. It does not in any way affect the use or occupation; it simply tends indirectly to increase its value, by excluding a competitor from the market for its products. . . . [W]hether a difference of degree or of kind, the distinction is plain between a . . . covenant that looks to direct physical advantage in the occupation of the dominant estate, such as light and air, and one which only concerns it in the indirect way . . . mentioned. The scope of the covenant and the circumstances show that it is not directed to the quiet enjoyment of the dominant land. . . . If it is of a nature to be attached to land, as . . . [Norcross] contends, it creates an easement of monopoly, — an easement not to be competed with, — and in that interest alone a right to prohibit an owner from exercising the usual incidents of property.''

the dominant parcel to a successor in title of the original grantee of the dominant parcel as to permit that grantee, even in equity, to enforce the restriction at least against a successor in title of the owner of the servient parcel who imposed the original restriction.

*Norcross* v. *James* was followed in *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, 183 (holding that the "implied promise of . . . [a] grantee not to carry on a grocery business" on the granted premises "does not make the use . . . of the land more convenient" but "simply tends to increase" the value of the dominant land "by excluding a competition"). The doctrine has been the subject of substantial adverse comment by authorities, some of which are mentioned in *Boston & Maine R.R.* v. *Construction Mach. Corp.* 346 Mass. 513, 519, fn. 4. See Clark, Real Covenants and Other Interests Which "Run with Land" (2d ed.) pp. 105, 113–115, 128–131, 170–172, 206–207, 252–253; Walsh, Conditional Estates and Covenants Running with the Land, 14 N. Y. U. L. Q. Rev. 163, 170–172; Walsh, Covenants Running with the Land, 21 N. Y. U. L. Q. Rev. 28, 46–50.[5] These authorities (and the decisions therein cited) indicate that, outside of Massachusetts, there is strong disinclination to be bound (a) by technical rules for the creation and enforcement of the type of equitable servitude discussed in *Tulk* v. *Moxhay,* 2 Phil. Ch. 774, 777–779 (see e.g. *Neponsit Property Owners' Assn. Inc.* v. *Emigrant Ind. Sav. Bank,* 278 N. Y. 248, 255–262; see also *165 Broadway Bldg. Inc.* v. *City Investing Co.* 120 F. 2d 813, 815–820 [2d Cir.]) ; and (b) by any such narrow view of what constitutes a covenant or restriction "touching" the land as that laid down in *Norcross* v. *James.* Certainly, no such restrictive view has been adopted with respect to leasehold estates even in Massachusetts. See *Sheff* v. *Candy Box Inc.* 274 Mass. 402, 406–407.

[5] Other authorities include Reno, Enforcement of Equitable Servitudes in Land, 28 Va. L. Rev. 951, 970, 1070–1071, and Bialkin and Bohannan, Covenants Not to Establish a Competing Business — Does the Benefit Pass? 41 Va. L. Rev. 675, 676–678. See Am. Law of Property, § 9.13, pp. 376–380. Cf. Restatement: Property, §§ 537, 543 (2) (b) ; Proceedings, Am. Law Inst. vol. 20 (1943) pp. 130–140; vol. 21 (1944) pp. 335–343. Cf. also Covenants in the Future, 111 Sol. J. 143.

There is much to be said for the position advanced by one of the amici curiae[6] that it is not "unreasonable to approve covenants . . . which protect . . . [business] investments — very large in most instances — against competition close by," where the protection will be very limited geographically and will not constitute, in the particular circumstances, an unreasonable restraint of trade. If we were without precedent, we might (in 1967 conditions) reach a conclusion different from that of our predecessors upon the facts which appeared in *Norcross* v. *James,* and in *Shade* v. *M. O'Keefe, Inc.* We recognize that there may be substantial reasons for permitting those, having privity of estate with a covenantee of a reasonable covenant restricting competition, to enforce such a covenant in equity against a person having (a) actual or constructive notice of the covenant, and (b) privity of estate with the covenantor.

It is pressed upon us, however, by the other amici curiae that the Massachusetts cases just cited are "widely recognized and relied upon by our bar," although these amici curiae concede that there is a demand for covenants restricting competition "particularly for shopping centers and service stations." The fact of bar reliance in the past, however, must be given weight where a rule affecting real estate is involved. Less persuasive to us are their arguments that prohibiting the "running" with the land (apparently even in equity against persons with notice) of covenants restricting competition serves "practical purposes in supporting free marketability of title" and makes it unnecessary that references to the restrictions "be included in [conveyancers'] abstracts" of title.[7]

---

[6] He points out the significance, in planning large retail sales building and land investments, of market surveys to establish the extent of prospective competition for the available patronage. This, he suggests, tends to establish the importance of reasonable equitable restrictions against competition.

[7] Statutory provisions to alleviate the burden upon conveyancers presented by restrictions are to be found in G. L. c. 184, §§ 26–30, inserted by St. 1961, c. 448, § 1. It is pointed out, however, by the individual amicus curiae that, in many commercial situations where reasonable restrictions against competition are desirable to further business investments, the simplification of the task of the conveyancer (and the reduction of the expense of title searches) may not be as important as in cases dealing with residential real estate.

It seems to us that in this case, as in probably numerous other past transactions, there may reasonably have been reliance upon *Norcross* v. *James* and *Shade* v. *M. O'Keefe, Inc.* Our decisions have not heretofore expressed any uncertainty about the soundness of those cases under modern conditions. We follow them in this case although, apart from their authority as precedents, we might have permitted Shell and Stafac to enforce in equity the 1962 restrictions against Ouellette and such of its successors in title as may have had actual or constructive notice of the restrictions.[8]

2. A final decree is to be entered in the Superior Court dismissing the bill.

*So ordered.*

---

[8] We need not now decide what result should be reached in the case of a reasonably limited covenant (of similar import) hereafter made, which shows clearly the parties' intention that the burden and benefit of the covenant are to run to successors in title of the covenantor and the covenantee. We do not now overrule *Norcross* v. *James* and *Shade* v. *M. O'Keefe, Inc.* prospectively or otherwise. See *United States ex rel. Angelet* v. *Fay,* 333 F. 2d 12, 16–17 (2d Cir.), affd. 381 U. S. 654; Leach, Property Law Indicted, pp. 14–31. See also Cardozo, Nature of the Judicial Process, 142–156, and Growth of the Law, 117–126. We can consider whether to do so when there is before us a case arising upon a covenant made in the future. In the meantime, application of the pertinent legal principles may have been affected by legislation.