Argued 23 March, decided 18 April, 1904.

## HOUSTON *v.* ZAHM.

[76 Pac. 641.]

EASEMENT — EVIDENCE.

1. The evidence does not show that the street agreed to be opened by the parties to the contract in suit was ever actually either dedicated or used.

EVIDENCE OF WAIVER.

2. The evidence does not show that the agreement in question was abandoned, or a compliance with its conditions waived.

RULE IN CONSTRUING UNCERTAIN EASEMENTS.

3. As a general rule, the presumption is that an easement is appurtenant rather than in gross, where there is an uncertainty as to the nature of the grant.

ESSENTIAL IN CREATING EASEMENT APPURTENANT.

4. In order to create an easement that shall be appurtenant to an estate and run with the land, it is necessary that as a part of the transaction the grantor either part with or receive some title to or interest in the land impressed, or create some right for the benefit thereof, otherwise the agreement will be but a personal promise.

COVENANT NOT AMOUNTING TO AN EASEMENT.

5. An agreement between an owner wishing to sell a tract of land and a prospective buyer that the latter, if allowed to buy, will open and maintain a public highway through it, between certain points, although the option was exercised and the agreement recorded, does not create an easement or a right to have the way opened, as against a subsequent purchaser from such buyer. The agreement is merely a personal covenant, collateral to the land, and not assignable.

From Multnomah: MELVIN C. GEORGE, Judge.

This is a suit by M. Merriman Houston and others against John A. Zahm and another to compel the specific performance of a contract to open and maintain a highway, made and entered into February 25, 1891, between

L. D. Brown, Sherman D. Brown, and the Peninsular Real Estate Company on the one part, and the Portland University on the other. The contract, so far as it is important for consideration, reads as follows:

"That in consideration of the party of the second part locating its university buildings on the southeast part of the John Waud donation land claim in T. 1 N., R. 1 E., in Multnomah County, Oregon, and opening and maintaining a good highway at least sixty feet wide from the east end of Ballantyne Street, in the plat of Melvin (after the said east end of said Ballantyne Street shall have been moved sixty feet north of its present location, and said street extended westerly in a straight line from such east end after so removed to the present bend or crook in said street) to Spaulding Street or an easterly extension thereof, the parties of the first part agree to sell and convey to the party of the second part at its option, the south half cut off by a line parallel with Spaulding Street of that part of tract numbered fourteen in Melvin which belongs to the parties of the first part or either or any of them, and lying north of said Ballantyne Street after so moved, for the price of eleven hundred dollars per acre. * * And the parties of the first part further agree to consent to and use their best endeavors to procure the vacation of Long Street in Melvin from Ballantyne to Spaulding Street."

At the time of entering into the contract or agreement the first parties were the owners of lots Nos. 16 to 23, inclusive, and lot No. 25, in Melvin, as well as the easterly portion of tract No. 14. To indicate more clearly the situation and the holdings of the parties, a plat of a part of Melvin is subjoined, that part of tract 14 then owned by the first parties being indicated as lying easterly of the dotted line running lengthwise through it.

The plaintiff, the Tyler Investment Company, has succeeded to the title to an undivided one-half of lots 16 to 20, inclusive, the Columbia Real Estate Company to the title

of lots 21 to 23, and M. Merriman Houston to that of lot 25. The Portland University, at the time of the execution of the contract, was not the owner of the land upon which the university building was subsequently located as shown by the plat—the tract containing 15.77 acres, and extending from Spaulding Street, if extended easterly, south to the southern boundary of Melvin. The university obtained the title later, however, on May 29, 1891, and it also became or was the owner of the land in Melvin lying west of said easterly portion of tract 14. On April 30, 1891, Sherman D. Brown and the Peninsular Real Estate Company conveyed the whole of said easterly portion of tract No. 14 to the Portland University by deed, with full covenants of warranty, without reservation of any kind, and by ordinance passed July 5, 1893, and approved the following day, petitioned for by the Portland University and Sherman D. Brown, the whole of Ballantye Street from the angle to the easterly end thereof was vacated. About the same time or shortly afterward the university deeded to Brown a triangular tract, beginning at the angle in the south line of Ballantyne Street, and running thence easterly along the south line thereof to the east boundary of Melvin ; thence north along the said east boundary 50 feet; thence southwesterly to the place of beginning. Long Street was also vacated, but at what time is not shown. The defendant John A. Zahm has succeeded to all the interest of the Portland University in and to all its lands and premises.

Plaintiffs allege that the first parties to the contract have fully performed all the terms and conditions thereof on their part; that the Portland University subsequently, about April, 1893, allowed the premises which would have been occupied by Ballantyne Street if it had been relocated as agreed to be used as a highway by plaintiffs and other persons, and also opened a highway sixty feet in width from the east end of Ballantyne Street as agreed to be re-

located to Spaulding Street and streets connecting there-
with ; that plaintiffs and the public were in the use of the
highways, and continued so to use them with the know-
ledge and consent of defendants, subject only to such tem-
porary gates and fences as were satisfactory to all parties,
up to the 1st day of January 1900; that neither the Port-
land University nor any of its successors or assigns has
ever formally dedicated or caused to be dedicated said por-
tion of Ballantyne Street agreed to be relocated or said
highway upon the public records, and has latterly forbidden
plaintiffs the use thereof, and threatens to close the same
to plaintiffs and the public; that the Portland University
is insolvent, and that John A. Zahm purchased and now
owns said land with full knowledge of the agreement and
the acts done in pursuance thereof.   The answer sets up
an abandonment by the parties of the contract in question,
and controverts the legal right of plaintiffs to a specific
performance.   A decree having been rendered in accord-
ance with the prayer of the complaint, defendant Zahm
appeals.                              REVERSED.

For appellant there was a brief and an oral argument
by *Mr. Richard Williams* and *Mr. Emmet B. Williams.*

For respondents there was a brief and an oral argument
by *Mr. Thomas N. Strong* and *Mr. Jarvis V. Beach.*

MR. JUSTICE WOLVERTON, after stating the facts in the
foregoing terms, delivered the opinion of the court.

1. The questions of fact. involved relate to the alleged
abandonment of the contract and the opening by the uni-
versity of the east end of Ballantyne Street as agreed to be
relocated, and a 60-foot highway to Spaulding Street, or
an easterly extension thereof.   Sherman D. Brown testifies
that the contract was entered into for the purpose of giving
more space to tract numbered 25 on high ground between
Ballantyne Street and the edge of the bluff, the first parties

being the owners at that time of the tract; and that at the time the deed was executed and delivered to the Portland University the secretary of the corporation gave to him a memorandum as follows:

"Sh. D. Brown & Peninsular R. E. Co. have this day delivered to Portland University Co. deed for land in Melvin, Ballantyne Street in said tract is to be moved as agreed upon. This is part of consideration."

He testifies that the secretary then said to him "that the original agreement should be carried out"; that the highway mentioned in the agreement, from the end of Ballantyne Street as it was agreed to be relocated to Spaulding Street, was opened nearly to the head of Olin Street immediately after the deeds were executed and work was begun on the university building, and was used by plaintiffs and every one for five or six years; that the grounds were all cleared off, the highway being well graded, but that a fence and gateway were put in some two or three years ago, the recollection of witnesses being indistinct as to the time of their construction. Mr. Robert C. Houston testifies that he was over the ground about a month before he was called as a witness, and that there were some indications of an old road leading from the gate near Olin Street along the top of the bluff in front of and beyond the university building.

D. C. Hoyt says that he has known the premises since 1881; that Mock formerly had a wood road immediately in front of where the university building now stands; that it was used by him and other parties desiring to go through that way, and to the present time it is used by people going to and from the building; that it was the only immediate highway that the Portland University people had to their grounds; that for years before the Portland University discontinued the school it put a fence along Spaulding Street, but made no restrictions against any one going

through. On cross-examination he continues that the way used by Mock was a private road. A. C. Fairchild says that the premises that are now the university campus were inclosed by a fence about five years ago, up to which time they were open; that near the bluff, and near the road running down to Mock's wharf, there was a roadway leading in front of the university, which was used for all purposes connected with the institution; and that he knew of no restrictions put upon the use of it until the gateway was provided.

John Mock testifies that he sold the land upon which the building stands to the university, and that he had a wood road, a private way, running along the bluff in front of the building in an early day; and Merriman Houston, that he lived adjoining the university premises for eleven years, that when he first knew them they were all open from Spaulding to Ballantyne Street, and that an old road extended from near the end of Olin Street along the bluff into the grove to the rear of the site of the university building, that the university campus was inclosed in the year 1897 or 1898 and a gateway was put in from Spaulding Street.

P. L. Willis testifies in behalf of the defendants that the Portland University had an option (referring to the agreement of February, 1891) to buy from Brown all his interest in tract 14 lying north of a point sixty feet north of Ballantyne Street; that the agreement was afterward abandoned, and that he deeded to the university the whole of the tract down to Ballantyne Street; that Brown's idea in holding the remainder of the land was to sell at a large figure, and that from his conversation with Brown the idea of the right of way from Ballantyne Street did not strike him as of much importance, or that Brown placed any importance upon it at all; that the fence along Spaulding Street extended, which has since come to be known

as "Willamette Boulevard," has been there practically ever since the university building was located; that when the boulevard was widened the old fence was torn away, and another put up in its stead, which was about the year 1894 or 1895, and that it has been there continuously ever since; that there was an old road—the Mock wood road—extending from the gateway around near the building to where Mock had a chute to carry wood down to his dock, but that the use for that purpose has long since been discontinued, and that there never has been any road leading from the east end of Ballantyne Street to the gateway, at least not for a great many years. F. I. McKenna testifies that he has known the premises for thirteen years; that when the university building was first located the campus was all in a sort of wilderness, with some wood roads running through it; that there was a wood road running along the bluff that came in through the gate; that the first fence was built along Spaulding Street in 1891 or 1892; that the present fence was built in the spring of 1894; and that the first fence either had a gate or bars—something to keep the stock out. Other witnesses testify that a driveway existed from the gate to the university building, but that it was used only in connection with the school, and did not extend beyond the building.

It is quite apparent from a careful survey of this testimony that the Portland University never opened a highway of any kind from the east end of Ballantyne Street, as agreed to be relocated to Spaulding Street. Formerly a wood road ran along the bluff from very near the gateway to, and perhaps beyond, the site of the university building, but this was only used for private purposes while it existed. When, however, the university people assumed control, the premises were wholly enclosed, and a gateway provided at Spaulding Street for entrance to and exit from the building, and the roadway was never used for general

public purposes, nor ever in any sense became or was allowed to be used or traveled as a public thoroughfare, so that the university never opened up a highway—that is, a public thoroughfare—between the points designated, either in pursuance of the agreement or otherwise. The same may be said of the east end of Ballantyne Street as agreed to be relocated.

2. As to the waiver on the part of Brown and the Peninsular Real Estate Company of a performance of the conditions of the agreement upon the part of the university, some things that happened would indicate that such was their purpose—as, the execution by them of the deed to the university without reserving the space to be occupied by the relocation of Ballantyne Street; the vacation of the whole of Ballantyne Street from the angle easterly, when it was unnecessary to vacate a portion of it if a change was still intended ; and the deeding of the triangular piece, which was virtually half of the street, by the university to Brown. The memorandum given to Brown by the secretary of the university, however, would seem to indicate that it was still the purpose of the parties to conform to the agreement, and, upon the whole, we cannot say that there has been a waiver or abandonment of its conditions or obligations.

3. We come now to the legal effect of the contract. It was primarily an option accorded the university to purchase the property therein described ; but when it acted upon the option, and took over the title, there was such a performance on the part of the first parties as required the university to perform the further obligations entered into upon its part, those remaining being to open up Ballantyne Street as agreed to be relocated, and to open and maintain a good highway sixty feet in width from the end of Ballantyne to Spaulding Street, or an extension thereof. It may well be doubted whether the stipulation with refer-

ence to the location of the highway is of such a definite and certain character as to be susceptible of enforcement. But it may be conceded for the purposes of this case that it might have been enforced by the first parties to the contract as against the university personally. The purpose of the agreement was, no doubt, to create an easement over the premises thereafter to be, and which were, acquired by the university, and now constitute a part of the college campus. As to the nature of the easement, plaintiff's counsel urge with signal ability that it is appurtenant, or at least such as a court of equity will enforce in favor of the grantees or successors in interest of the first parties as against the successors in interest of the second parties; while, upon the other hand, it is argued with equal skill that the easement, if any such was created, was in gross, personal to the grantees, and not assignable or inheritable; consequently, that it is insusceptible of enforcement by the successors or assigns of the first parties, and especially may it not be enforced as against a successor to the Portland University, who it is claimed purchased without knowledge of the agreement.

Mr. Justice RHODES well indicates the distinction between an easement appurtenant and one in gross in *Wagner* v. *Hanna,* 38 Cal. 111, 116 (99 Am. Dec. 354), where he says : " To the creation of a right of way that amounts to an easement and not merely to a right of way in gross, two tenements are necessary—the dominant, to which the right of way belongs ; and the servient, upon which the obligation rests. * * The principal distinction between a right of way in gross and an easement is found in the fact that in the first there is, and in the second there is not, a dominant tenement. The right of way is in gross, and personal to the grantee, because it is not appurtenant to other premises. The owner of premises may grant the right of way in either form, and if it is the intention to grant a

right of way in gross, there is no mention of dominant premises. If the grant is of an easement, it is always made for the benefit of other premises, and the premises to which the way becomes appurtenant are described in the grant." The learned authors of the American and English Encyclopædia of Law, (2 ed.) vol. 10, p. 403, make practically the same distinction. They say: "An easement appurtenant is an incorporeal right, which, as the term implies, is attached to and belongs to some greater or superior right; something annexed to another thing more worthy, which passes as incident to it. * * Under the rule that there can be no easement without a distinct dominant tenement, there can, in strictness, be no such thing as an easement in gross. There is, however, a class of rights which are impressed upon the land of one person in favor of another person or other persons, and not in favor of another tract of land, and these rights are sometimes spoken of by courts and legal writers as 'easements in gross.'" For further illustration, see *Garrison* v. *Rudd,* 19 Ill. 558. As a rule of construction in determining whether in a given case an easement is appurtenant or in gross, courts favor the former, and, if the right in controversy is in its nature an appropriate and useful adjunct to the land conveyed, having in view the intention of the grantee as to its use, there being nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant, and not in gross, the presumption therefore being in favor of the former where there is a doubt as to the real nature of the grant: 10 Am. & Eng. Enc. Law, (2 ed.) 405; *Wagner* v. *Hanna,* 38 Cal. 111 (99 Am. Dec. 354).

4. Another legal principle is involved : That the quality of running with the land may be impressed upon a covenant, it is not sufficient that it be made concerning land, but there must be a privity of estate between the contract-

ing parties, and the covenant must have relation to an interest created or conveyed in order that it may pass to the grantee of the covenantee. It will suffice if the covenantor have an equitable interest merely (8 Am. & Eng. Enc. Law, 2 ed. 149), there being a distinction to be noted between those rights which run only with the estate in the land and those which are said to be attached to the land itself: *Norcross* v. *James*, 140 Mass. 188 (2 N. E. 946). A covenant for title may be instanced as belonging to the former class, so that he who stands in privity with the estate with reference to which the covenant was made by descent or purchase from the grantee or covenantee is entitled to the benefit of the covenant. The covenant pertaining to the other class partakes of the nature of a grant or reservation, which carries with it an interest in the land itself, or becomes attached to and qualifies the estate, and it goes with the land, irrespective of privity. An easement appurtenant is of this latter class. It is a part of the dominant estate, and remains a servitude upon the servient estate into whosesoever hands the former may come. So, "an owner," as is said in *Trustees* v. *Lynch*, 70 N. Y. 440, 449 (26 Am. Rep. 615), "may subject his lands to any servitude, and transmit them to others charged with the same; and one taking title to lands, with notice of any equity attached thereto, or any outstanding right or claim affecting the title or the use and enjoyment of the lands, takes subject to such equities and such right or claim, and stands in the place of his grantor, bound to do or forbear to do whatever he would have been bound to do or forbear to do. * * The language of courts and of judges has been very uniform and very decided upon this subject, and all agree that whoever purchases land upon which the owner has imposed an easement of any kind, or created a charge which would be enforced in equity against him, takes the title subject to all easements, equities, and charges, how-

ever created, of which he has notice." And "a personal covenant or agreement," says Mr. Justice Bigelow in *Whitney* v. *Union Ry. Co.* 11 Gray, 359, 364 (71 Am. Dec. 715), will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform." See, also, *Phœnix Ins. Co.* v. *Continental Ins. Co.* 87 N. Y. 400. But where a person covenants with another in respect to land, and at the same time, with and as a part of making the covenant, neither parts with nor receives any title or interest in the land, nor creates an easement or right in the nature of an easement for the benefit thereof, such a covenant is at least but a mere personal contract, and wholly collateral to the land, and, of course, could neither run with the land nor become attached to or a part of it, so as to qualify the estate : *Hurd* v. *Curtis*, 19 Pick. 459 ; *Bronson* v. *Coffin*, 108 Mass. 175 (11 Am. Rep. 335); *King* v. *Wight*, 155 Mass. 444 (29 N. E. 644).

5. Measured by these principles, we are to determine whether plaintiffs have a cause of suit against defendant Zahm, the Portland University not being a contestant here. At the time of entering into the contract or agreement upon which plaintiffs base their cause, the Portland University had no interest whatever, either legal or equitable, so far as the evidence shows, in the property through which it agreed to open a sixty foot highway ; and, there being no privity of estate between the contracting parties, its covenant in that regard could not, therefore, run with the land. This much is very clear. The agreement or the covenant on the part of the university, if it may be so styled, had no relation to any interest in land created or conveyed, and there was no privity of estate between the

parties. It is not sufficient, as we have seen, that it be concerning land; and that is all it is—a mere undertaking, we may say, executory in character, to dedicate an easement through land that the university did not at the time own. The contract is therefore devoid of that absolutely essential requisite to endow it with that peculiar characteristic of a covenant running with the land. Upon the other hand, the university was clearly not in a position to burden the land with an easement, having no estate therein to grant. Not being the owner, it could not create any servitude upon it, hence its agreement to open out a highway through it could not affect the land itself, or qualify the estate therein. There was no attempt to designate or describe the dominant tenement, but, if it could be otherwise shown that the land then owned by the first parties was intended as such, it could not aid the plaintiffs, as the university could not then annex the easement contended for.

Carrying the logic of the authorities still further, the university did not, by the agreement, even so much as create an easement in gross. Not having an estate in the land at the time, it was an executory undertaking, wholly collateral to the land, and entirely personal in its portent and bearing. As is indicated by the cases, a person may subject his lands to any servitude, and transmit them to others charged with the same, but he cannot subject those belonging to others to any servitude whatever, and if he covenants respecting them it is an altogether personal undertaking, which does not in any manner affect the lands themselves. So, if a person be the owner when he covenants to burden lands with an easement or a servitude, equity, regarding that as done which ought to be done, will impress the burden upon the property coming into other hands with knowledge of the covenant. It does this because the covenant has been so impressed in the first

instance, but it may be questioned whether equity will so treat a covenant that is made concerning land only, and does not at the same time create an interest or estate in the land, either legally or equitably, because of the want of ownership therein at the time. Whatever way we may turn the proposition, however, the agreement or covenant with reference to the establishment of the sixty foot highway to Spaulding Street was a mere personal covenant, wholly collateral to the land, and not assignable.

But, if it be conceded that plaintiffs have a standing to enforce the agreement by reason of yet having an undivided one-half interest in the title to lots 16 to 20, inclusive, they cannot enforce it as against Zahm, the successor to the university, as it is not shown that he took with notice or knowledge thereof, and the covenant of the university is therefore not binding upon him in any sense. As the agreement affects the tract upon which the university was given an option to purchase, it was such, perhaps, as would have bound the university in equity to grant the easement. The first parties thereby, in effect, reserved the right to have that part of Ballantyne Street from the angle east changed or relocated ; and, if the deed had been made in accordance therewith, it would have amounted to a reservation in the grant, or, as is sometimes construed, a grant by the university, and that would have been the end of the matter so far as that particular tract is concerned, and the easement would have been impressed upon the estate. But the deed was to the whole tract, with a collateral undertaking on the part of the university, if the memorandum of its secretary may be so construed as continuing the original agreement still to relocate the street as stipulated. This undertaking, however, so far as the record discloses, was wholly unknown to Zahm, and he could not be bound by it. Nor did the recording of the original agreement serve to notify him constructively, as,

at the time he purchased, the title to the latter tract had apparently been conveyed by the first parties to the university without reference to the agreement, so that he may well have supposed that it had been abandoned, and that his title was good.

It follows from these considerations that the decree of the trial court must be reversed, and the complaint dismissed, and it is so ordered.                    REVERSED.