UNITED STATES v. GOSSLER et al.

Civ. No. 1729.

District Court, D. Oregon.

April 2, 1945.

972

Ernest Falk and Linus M. Fuller, Sp. Attys., Department of Justice, and William M. Langley, Asst. U. S. Atty., all of Portland, Or., for plaintiff.

Lawrence T. Harris, of Eugene, Or., and James C. Dezendorf, of Portland, Or., for defendants Gallagher.

JAMES ALGER FEE, District Judge.

This action for condemnation of lands came on for trial of value of the interests of defendants Gallagher and intervenors McNutt, in the Gossler tract of land, before the court with a jury. A verdict was returned establishing the market value of these interests and judgment entered. A motion for a new trial has been filed by the defendants.[1] In order that the points raised thereby may be considered in relation to the setting, a review of the course of the proceedings is necessary.

The action was initiated in the usual manner. The complaint alleged that the Gallaghers claimed some interest in the lands owned by the Gosslers in fee. A declaration of taking of a fee-simple interest in the lands was thereafter placed on file. Gallagher answered, setting up a right to use a roadway across the lands taken. The McNutts were permitted to intervene as partial assignees of Gallagher. The United States moved to amend the declaration of taking to acquire the fee of the Gosslers, subject to a use in common of the roadway by the United States and the intervening

---

[1] "Defendant's" is used throughout to designate the intervenors whose petition is identical.

defendants,[2] but this was denied since the court believed the circumstances made it inequitable for the Government to withdraw.

■ ■ Under the regular procedure of this court, a hearing was had as to the market value of the interest of the record owners, and a finding of fact made as to the value thereof. These hearings, although ex parte, usually are in fact trials and a judgment based thereon would be final,[3] subject to the usual rules. Such a finding of fact based on sworn evidence tends to protect the United States from fraud,[4] and tends to protect the judge, who is required to countersign the check disbursing the funds to the landowner based on the evidence taken at the hearing. On stipulation of all parties an order was entered and the judge countersigned checks to the Gosslers for their interest. However, no determination was made at that time as to whether compensation should be paid to the owners of the roadway.

The court thereupon heard argument upon motions to strike and demurrers of the United States to the answers of the McNutts and Gallaghers.

It is said in these answers that Crown-Zellerbach Corporation made an agreement with Gallagher granting, for a period of years, the right to take sand and gravel from real estate owned by Crown-Zellerbach on the Santiam Bar adjacent to the Willamette River and specifically described by metes and bounds. The "Gossler Tract" and another tract known as the "Crocker Tract" intervened between the gravel bar and the county road. The Crown-Zellerbach agreement contemplates a right of way shall be obtained from the county road to the gravel bar and that Crown-Zellerbach have a right to the use of it. The Crockers and the Gosslers, by contracts under seal, granted easements of right of way to Gallagher from the road to the gravel bar for a period of five years, but neither grant mentioned the Crown-Zellerbach land or the gravel pit. Gallagher transferred an interest in all rights created by these contracts to the McNutts. A road was constructed and used on the rights of way, and upon the Crown-Zellerbach property, and bunkers, machinery and equipment were installed. Gravel was hauled from the pits on the Crown-Zellerbach real property over this road. Defendants alleged that because of the taking of the intervening tracts by the Government, they lost the sale of enormous quantities of sand and gravel and profits by virtue of the demand for such commodities at the date of taking, at Camp Adair and upon highway contracts upon which defendants had been awarded the bid.

The position of the Lands Division was that since the property of the Gosslers was acquired in fee simple, payment therefor vested the United States with all interest whatsoever in that area; that Gallagher and the McNutts had no property right in these lands but only an easement in gross and that any damage these litigants sustained was because of frustration of contract for which the United States was not liable.

■ The court overruled motions and demurrers. For clarity of discussion, the theory of these rulings, upon which the case was subsequently tried, is here indicated. When the United States acquires property by condemnation and an unlimited use is contemplated, all interests in the parcel are abrogated[5] except those specifically excepted, as was done for public roads in this complaint. The fallacy of the reasoning which lies at the basis of these motions arises from the concept of the title of real property as a thing with physical attributes, whereas title is a conglomerate of jurisdiction and substantive legal rights fused with the residuals of equitable remedies all developed historically out of feudal notions and medieval conditions. By this proceeding the United States does not acquire a physical thing by taking the fee simple title of the Gosslers, but sets up another title by extinguishment of all interests inconsistent with use by the Government. Since the United States is investing itself with an utterly new title[6] and extinguishing the whole aggregate of rights connected

[2] See Catlin v. United States, 65 S.Ct. 631.

[3] See United States v. Bauman, D.C., 56 F.Supp. 109, 117.

[4] See E. C. Shevlin Co. v. United States, 9 Cir., 146 F.2d 613.

[5] United States v. Welch, 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann.Cas. 680;

Silberman v. United States, 1 Cir., 131 F.2d 715; United States v. Certain Lands in City of Des Moines, D.C., 46 F.Supp. 800, 802. See Peabody v. United States, 231 U.S. 530, 538, 34 S.Ct. 159, 58 L.Ed. 351.

[6] Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216; Emery v. Boston Terminal Co., 178

with this piece of ground by condemnation, the Fifth Amendment requires compensation for all property rights so erased.

■ The United States cannot abrogate all, but pay for the particular right known as the fee simple title alone. The owner of another recognized property interest attached to the soil would then receive no compensation just or otherwise.[7] Indeed in practice, the value of the fee simple title might well be materially reduced by the existence of this right of way. If payment were made for a specific interest such as the fee title, out of the aggregate, the Government would abrogate the other interests without paying monetary consideration therefor. Such a result does not satisfy the demands of the amendment. The United States is liable to the owner of an easement appurtenant in a suit condemning the fee of the servient estate.[8]

■ It must be remembered at this point that the question is not who owns the right of way, but whether there exists a property right for which the condemnor must pay compensation. The modern English law does not recognize easements in gross. A profit a prendre may be defined as the power and the privilege to acquire through severance, ownership of some part of the physical substances included in the possession of land.[9] Such a profit a prendre at common law was an interest in land, and contradistinquished from an easement, could exist in gross. However, a profit a prendre laid a foundation even at common law for the attachment of an easement of right of way appurtenant.

Quaintly enough, there was a profit a prendre in gross consisting of a fishery on the river Ware which savored sufficiently of the soil to serve as a dominant tenement for rights of way connected with the fishing, according to Justice Buckley's interpretation of Note 7 to Hargreave and Butler's edition of Co. Litt. 121 b.[10] Gale [11] says, commenting upon this case, "* * * the true test of appurtenancy was the propriety of relation between the principal and the adjunct, which might be found out by considering whether they so agreed in nature and quality as to be capable of union without incongruity." Based upon this the commentator foreshadowed the proper solution of the case at bar by the answer supplied to certain supposititious circumstances as follows: "Applying the above-mentioned test, it is submitted that if the owner of a right to take certain minerals (p) under close A. obtained from the owner of an adjacent close, B., a grant of a way over the close B., or a right to discharge water over it, for him, his heirs and assigns, as appurtenant to the right of mining, an easement would undoubtedly be created and would be appurtenant to the incorporeal right already vested in the grantee."

In modern American law, the distinctions between easements in gross, profits a prendre and easements appurtenant was first slurred over and may now be regarded as non-existent. Even if it be concluded that by strict common law doctrine there was no right in the real property here created, the vast majority of jurisdictions of this country include it in this classification. Under the preferred American doctrine, the burden of the easement granted across the Gossler lands would be imposed upon a grantee thereof, or a disseisor of that parcel, since it is a property interest.

Since no case has arisen in Oregon under the exact circumstances, it cannot be determined whether these interests are property rights in the Gossler land.[12] It is to be assumed that the courts of the state would follow the modern tendency [13] and it is certain

---

Mass. 172, 184, 59 N.E. 763, 86 Am. St.Rep. 473.

[7] Cf. United States v. Puget Sound Power & Light Co., 9 Cir., 147 F.2d 953.

[8] United States v. Welch, 215 U.S. 338, 339, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann.Cas. 680.

[9] See Restatement of the Law of Property, Division V, Servitudes, Chapter 37, comment f to § 450, pp. 2905–6.

[10] Hanbury v. Jenkins [1901] 2 Ch. 422. This doctrine may well have been accepted in this country also. Justice Sharswood in Tinicum Fishing Co. v. Carter, 61 Pa. 21, 37, 100 Am.Dec. 597. It is sometimes said there is an indica-

tion to the contrary in The Attorney General and The Bromley Rural District Council v. Copeland, 2 K.B. 106, but that was an attempt to found an easement of discharge of water upon another parcel with a right of way, as a dominant tenement instead of a profit a prendre.

[11] Gale on Easements, 10th Ed., p. 15.

[12] Guild v. Wallis, 130 Or. 148, 279 P. 546; Houston v. Zahm, 44 Or. 610, 76 P. 641, 65 L.R.A. 799; Ruhnke v. Aubert, 58 Or. 6, 10, 113 P. 38; Jackson v. Trullinger, 9 Or. 393.

[13] Restatement of the Law of Proper-

they would be influenced by the fact that these interests are of a commercial nature and by their nature and quality, can be united without incongruity.

The question of what interests should be paid for by the sovereign in condemnation is an intensely practical one. Consideration must then be given to such factors. The interest which must be compensated for in condemnation proceedings have caused the most notable divergences of the courts and one of the most bitter disputes among legal scholars in modern American law. But this matter should be explored realistically.[14] The court should not be hampered by a sylogistic adherence to feudal categories of estates. The concept "easement in gross" should not hamper inquiry even though it is probable no such interest exists in present day English law. Here is a profit a prendre in gross to take gravel from the Crown-Zellerbach parcel to which is inseparably attached rights of way over that parcel and two adjoining pieces of land forming a continuous basis for a road from the Santiam Bar to the highway.

This right of way exists in grant. This right could, then, have been enforced against the Gosslers by action for damages or by process of injunction. Crown-Zellerbach, the owner of the land upon which the gravel bar existed, had an enforceable interest in the right of way. There was a commercial benefit to Crown-Zellerbach and to the parcel of land owned by it through the continued existence of this easement. There was commercial benefit to the profit a prendre owned by Gallagher and the McNutts in the existence of the right of way on which to haul gravel severed from Crown-Zellerbach land over three contiguous parcels of land to the highway.[15] Therefore, the easement "touches and concerns" each, the Crown-Zellerbach parcel, the profit a prendre, the Gossler parcel, and the intervening tract.

A right of way is a classic easement. The solution of the problem is indicated by the Circuit Court of Appeals of the Second Circuit in United States v. 53¼ Acres of Land, 139 F.2d 244, 247, where it is said, concerning the interest of a mortgagee of a leasehold who had the right of redemption under a statute after termination of lease by summary proceedings for non-payment of rent: "We see no reason to grope about in the mysterious world of 'estates' and 'interests not estates'. The law of New York has put the matter on a very practical basis: a right with respect to property taken in condemnation may be so remote or incapable of valuation that it will be disregarded in awarding compensation; otherwise it will not be disregarded."

In Brooklyn Eastern District Terminal v. New York, 2 Cir., 139 F.2d 1007, 1011, 152 A.L.R. 296, after quoting the case above cited, the court says: "Seemingly the only doubt is as to whether the interests are in gross; for we question petitioner's contention that they can be considered appurtenant to petitioner's other terminal facilities located elsewhere. * * * But this seems unimportant for our purposes here. There appears no reason why compensation should not be paid for the taking of easements in gross." (Citing many opinions and law review articles.)

The conclusion seems inescapable therefore, that when the United States condemned the Gossler tract, a compensable interest in land was destroyed and that the doctrine of indamnible frustration of contract did not prevent the United States from liability for this property right actually taken.

As the cause came on for trial, it would seem both parties acquiesced in this construction, at least to a degree. There was a stipulation by all parties that the jury should determine "not only the value of the road across the property described in this proceeding as Tract No. C–10, but also the value of the interest of defendants J. H. Gallagher and Belle K. Gallagher, his wife, Earl L. McNutt and J. Ira McNutt in and to the entire 1.8 miles of road leading from the county road across property formerly owned by A. W. Crocker and Agnes M. Crocker and described as Tract No. C–23 as set out in the case of United States v. O. C. Simpson et al. Civil No. 1111 and across the above mentioned Tract No. C–10, and across adjoining land owned by Crown-Zellerbach Corporation to the site of the Santiam Bar, and also the value of said defendants' interests in and to said Santiam Bar under a contract with Crown-Zellerbach dated April 11, 1942."

ty, Division V, Servitudes, § 489 and comment thereto.

[14] Restatement of the Law of Property, Division V, Servitudes, § 489, §§ 507, 508 and comment pp. 3092–3099.

[15] See note, 76 A.L.R. 597.

During the trial the court instructed the jury that the United States was bound to pay just compensation for these rights, describing these as property interests and required the jury to find the full price which these interests could have been sold on the open market for cash under appropriate conditions. The court instructed in part:

"The Gallaghers and McNutt Brothers had a property interest in the Crocker and the Gossler land, as disclosed by the right of way agreements which are in evidence, and an interest in the Crown-Zellerbach property and gravel bar, as is disclosed by the contract with Crown-Zellerbach. On June 18, 1942, the Government took the Crocker and Gossler lands and the Gallagher and the McNutt Brothers interest therein. As a result of this taking of these interests the United States is required to pay just compensation.

"The just compensation for this property consists in the fair market value thereof on the critical date of June 18, 1942.

"The fair market value of a property interest means the full price at which that interest could be sold on the open market for cash, assuming an owner willing to sell and a purchaser willing and able to buy."

■ However, the theory of the defendants as the case developed at trial, extended far beyond compensation for such property interest. Briefly, it was that the United States must compensate defendants not only for these property interests but also for the failure of defendants to make a profit upon an apparent demand in the vicinity for gravel at the date of taking. The demand was based upon the fact that Camp Adair was in construction near by and that the McNutts had bid upon a contract with the State Highway Department for the construction of a highway near by which, if awarded upon the then specifications, would have required great quantities of gravel. Apparently it was believed that compensation for sand and gravel not processed by defendants but in place in the Santiam Bar was to be recovered as well as for equipment set up by them for use on the bar. Furthermore, improper measures of compensation such as the cost of the road on the granted right of way were entertained. Instructions embodying variations of these ideas were asked for and

refused. The motion for new trial is based in part upon this refusal which it is claimed constituted error of law. The court said in part:

"Now, in this case I instruct you that there was no taking of sand or gravel by the Government, and you are not to allow any compensation for sand or gravel. There was no taking of any equipment, and you will not allow any compensation for any equipment. You are not to attempt to evaluate the loss in business, if any, suffered by any of the defendants. The Government did not take the business of any defendant, and therefore, no compensation could be allowed therefor. Neither will you consider the possible profit that might have been made in the sale of any sand or gravel, because there was no sand or gravel taken, and the Government is not required to pay for loss of a business proposition to anyone.

"The sole consideration for you is the fair market value of the Gallagher and McNutt property interests."

The court defined the property interests of defendants very broadly so that they included not only the whole right of way, but also the incorporeal right to take sand and gravel so far as connected therewith. The United States does not complain of this. The defendants cannot. If it were error, it was (1) superinduced by the stipulation entered by defendants in open court, and it was (2) a basis for the award of more compensation than defendants were actually entitled. However, this may be technically, the court was of opinion that the profit a prendre and the three connected rights of way must be evaluated together as a practical matter.

■ The danger inherent as a result of certain irrelevant evidence which got into the case and as a result of this submission of the interests of defendants as a whole, was that the jury might award damages for the loss of a business chance on the failure of the Gallaghers and McNutts to make a profit on the gravel business of Camp Adair, and the contract which they expected with the state. Even if there had been valid and enforceable contracts relating to this subject matter, the Government would not be liable for failure of the defendants to carry them out,[16] much less for a failure to make a profit. In the Omnia case, the difference between frustra-

[16] See Omnia Commercial Company, Inc., v. United States, 261 U.S. 502, 43 S.Ct. 437, 439, 67 L.Ed. 773.

tion of contract by seizure of the subject matter and appropriation of the contract itself is pointed out. It is there said, "Frustration and appropriation are essentially different things." So in this case there was an essential difference between compensation on the one hand, for the right to take sand and gravel, and the connecting rights of way and damages on the other hand, because defendants were not able to haul out gravel from the Crown-Zellerbach tract and thereby sell it at an alleged tremendous profit for construction at Camp Adair, or in the contract with the State of Oregon. This contract was, finally, not awarded to them. It is true that if they had got the contract and this gravel had been available, they might have made considerable money. But since, without fault of the Government, they did not get the contract with the state, the supposed consequences of the taking are pure speculation. The theory of recovery for frustration of contract was ruled out by the court when, in consideration of the motions and demurrers, it was held defendants could be compensated only if they held a property interest. Throughout the trial, it was apparent that defendants believed that this demand for the market price of sand and gravel at the date of taking, at nearby points, was of relevance and importance.[17] Such factors were of importance only to the extent that these were reflected in the fair market value of the property interests taken. In this case, the Government did not seize any sand, or gravel, or equipment,[18] but at most the right to go upon real property and sever sand and gravel therefrom. The court was bound to rule out these elements which would be pertinent only upon the taking of physical property such as sand and gravel, or as concomitants of a frustration of contract for which the United States is not liable.

The final position of defendants Gallagher and McNutt is that the attorneys for the Lands Division did not have authority to stipulate "to try two unfiled Tucker Act Claims for the value of defendants' interest in the Crocker land and a claim for compensation for use and occupancy of the defendants' road on the Crown-Zellerbach lands with this case."

The authority of counsel for the Government came directly from the Attorney General of the United States. The United States Attorney for the District of Oregon was joined as counsel in the cause. No lack of authority, therefore, appears to bind the United States by stipulation. Actually the court assumed that defendants would not be fairly compensated for their interest in this roadway across the Gossler lands unless the entire strip commencing at the gravel pits on Crown-Zellerbach lands and running to the county road, were evaluated. Whether these interests were paid for in this case does not affect the validity of the judgment here against attack by defendants. If so, defendants have received more than they were entitled to because such interests were fairly submitted for valuation. If in some other case, the defendants contend that for jurisdictional reasons the interests were not legally so submitted, the question of the effect of the stipulation and this judgment can be thus considered and the rules of res judicata applied.

A new trial is denied.

---

[17] This court is committed to the doctrine supported by the weight of authority that the market price of commodities existing as a part of the realty is not a proper measure of compensation, but the fair market value of the interest in real property as a whole, considering all appropriate elements, is the test. See Orgel, Valuation under Eminent Domain, Ch. IX.

[18] In another case in this court full compensation has been awarded Gallagher and the McNutts for gravel severed from Crown-Zellerbach lands under this same contract and processed and piled thereon, which was actually used by the Government.